IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SERRANO-CORTÉS, et al.,

    Plaintiffs,

        v.                            CIVIL NO.: 09-1017 (JAG)

UNITED STATES OF AMERICA, et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

**I.    PROCEDURAL HISTORY**

On January 12, 2009, Leticia Serrano Cortés ("Serrano-Cortés"), her husband Hector Cortés and the conjugal partnership they form (together "plaintiffs") filed a complaint in the present case against the United States of America ("United States"), Barceloneta Primary Health Services, Inc., d/b/a Atlantic Medical Center, Inc. ("Atlantic Medical Center"), Dr. Miguel Torres Rivas ("Torres-Rivas") and the United States Department of Health & Human Services. (Docket No. 1.) Claiming, *inter alia*, that Dr. Torres-Rivas, an agent and/or employee of the Atlantic Medical Center Hospital, acted negligently in failing to treat and diagnose Serrano-Cortés' allergic reaction to clinoril, a pain medication she had recently been prescribed, and by not properly documenting her medical history while taking said medication, plaintiffs assert medical malpractice claims under the Federal Tort

1

Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680.[1]  (Docket No. 1,¶¶ 1, 8-9.)  Defendant United States filed its answer on May 29, 2009.  (Docket No. 13.)

Pending before the court is a motion for summary judgment filed by defendant United States ("movant").  (Docket Nos. 27; 28; 29.)  Plaintiffs have filed their opposition.[2]  (Docket Nos. 37; 38; 39.)  The motion has since been referred to the undersigned for a report and recommendation. (Docket Nos. 42; 43.)

## II.  UNCONTESTED FACTS[3]

Atlantic Medical Center was deemed eligible for FTCA coverage pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n), on August 15, 2002, and said coverage has continued without interruption since that date, including during the relevant period.  (Docket Nos. 1, ¶ 11; 13, ¶ 11.)  Prior to the events in question, plaintiff Serrano-Cortés routinely received medical care at the Atlantic Medical Center.  (Docket Nos. 28, p. 1; 39, p. 1; 28-1, p. 12:2-7.)  She has a medical history of diabetes mellitus and psoriasis, but no history of allergies. (Docket Nos. 28, p. 2; 39, p. 1; 28-2, p. 32:7-10.)

---

[1] While the complaint explicitly states that plaintiffs' cause of action is brought pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-5142 (Docket No. 1, ¶ 8), plaintiffs assert that the district court's jurisdiction is premised on the FTCA. (Docket No. 1, ¶ 1.)  The undersigned shall thus treat plaintiffs' state law negligence claims "as coming under the umbrella of the [FTCA] statute." McCloskey v. Mueller, 446 F.3d 262, 267 n.3 (1st Cir. 2006).

[2] Plaintiffs also objected to the present motion on the grounds that it was filed after the deadline set by the court. (Docket No. 31.)  Movant had requested an extension until July 2, 2010 to file its motion (Docket No. 25) and filed the present motion while its request was still pending.  However, as the court subsequently found movant's request moot (Docket No. 32), the undersigned construes the present motion as timely.

[3] The record in this case, for purposes of the pending dispositive motion, is limited due to the fact that neither party has submitted relevant portions of Serrano-Cortés' medical records from the Atlantic Medical Center or Doctor's Center Hospital.  Additionally, while both parties cite the deposition testimony of plaintiff's expert Dr. Edwin Miranda Aponte ("Miranda-Aponte"), neither party has submitted relevant factual testimony from Serrano-Cortés, Dr. Torres-Rivas or any other witness establishing the procedures employed by Dr. Torres-Rivas in treating Serrano-Cortés on April 11, 2006 or regarding Serrano-Cortés' subsequent admission and treatment at the Doctor's Center Hospital from April 17, 2006 through April 21, 2006.

On March 31, 2006, Serrano-Cortés was admitted to the emergency room at Atlantic Medical Center. (Docket Nos. 1, ¶ 3; 13, ¶ 3.) While neither party submits a fact as to the reason for Serrano-Cortés' admission, the complaint alleges that she went to the emergency room with complaints of pain in her left leg. (Docket No. 1, ¶ 3.) Serrano-Cortés was prescribed clinoril, an anti-inflammatory drug, and flexeril, a muscle relaxant. (Docket Nos. 28, p. 2; 39, p. 1; 28-2, p. 38:15-21.)

On April 11, 2006, Serrano-Cortés returned to the emergency room at Atlantic Medical Center with "skin lesions, whitish, with exfoliation" on her forearms and thighs. (Docket Nos. 1, ¶ 4; 13, ¶ 4; 28, p. 3; 39, p. 2; 28-2, p. 32:2-19.) At some point prior to April 11, 2006, Serrano-Cortés had stopped taking clinoril after developing a "skin condition." (Docket Nos. 28, pp. 2-3; 39, pp. 1-2.) Serrano-Cortés was treated by defendant Dr. Torres-Rivas, an agent or employee of Atlantic Medical Center acting within the scope of his employment. (Docket Nos. 1, ¶ 9; 13, ¶ 9.) Dr. Torres-Rivas diagnosed Serrano-Cortés' condition as tinea corporis, skin lesions caused by fungus, and prescribed an anti-fungal medication and a corticosteroid.[4] (Docket Nos. 28, p. 3; 39, p. 2; 28-2, pp. 32:2-19, 36:1-9.)

While neither party has submitted a fact regarding the events that followed, plaintiff alleges that after using the prescribed medication and not seeing any improvement, on April 17, 2006 Serrano-Cortés was admitted to the emergency room at a different health care facility – Doctor's Center Hospital – complaining of swelling in both eyes. (Docket No. 1, ¶ 5.) She was diagnosed

---

[4] Dr. Miranda-Aponte stated in his deposition that Serrano-Cortés' skin lesions "could be" compatible with tinea corporis and were compatible with psoriasis. (Docket Nos. 28, pp. 3-4; 39, p. 2; 28-2, pp. 32:24-33:3, 35:21-24.) He also testified that the skin condition she complained of during her April 17, 2006 admission to Doctor's Center Hospital "could be" compatible with celulitis. (Docket Nos. 28, p. 4; 39, p. 2; 28-2, p. 61:5-19.) However, it is unclear whether the skin condition she alleges she had on April 17th was the same as that she complained of during her April 11th visit to the Atlantic Medical Center emergency room.

3

with an allergic reaction and discharged.  Id.  However, later that same day, Serrano-Cortés was "rush[ed]" back to the Doctor's Center Hospital emergency room after experiencing loss of vision, an inability to speak, and a narrowing of her trachea.  (Docket No. 1, ¶ 6.)  At that time, she was diagnosed as having an allergic reaction to clinoril.  Id.  Plaintiff was admitted to the hospital, where she "loss [sic] most of her skin in the whole body."[5]  (Docket No. 1, ¶ 7.)  She was treated with steroids and antibiotics and was discharged on April 21, 2006.[6]  Id.  Upon discharge, her diagnosis was noted as an allergic reaction.  Id.

## III.  LEGAL ANALYSIS

### A.  Summary Judgment Standard

Summary judgment shall be granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7]  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008) (internal quotation marks and citations omitted)).  The party moving for summary judgment bears

---

[5] Dr. Miranda-Aponte stated in his deposition that an allergic reaction to an oral medication, such as clinoril, would be systemic, meaning that when metabolized the reaction should "reflect throughout the whole body." (Docket Nos. 28, p. 4; 39, p. 3; 28-2, pp. 51:4-52:4.)  He also testified that such a reaction could persist despite the fact that the individual ceased taking the medication.  (Docket Nos. 28, p. 4; 39, p. 3; 28-2, pp. 67:3-16.)

[6] Although the complaint states that Serrano-Cortés was discharged on April 21, 2008 (Docket No. 1, ¶ 7), this is a typographical error.  (See Docket No. 28-2, p. 61:5-10.)

[7] Rule 56 was amended effective December 1, 2010, after the present suit was filed. However, "[t]he substantive standard for summary judgment remains unchanged." Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 2011 U.S. App. LEXIS 4964, at *8 n.5 (1st Cir. Mar. 11, 2011).  Therefore, since the application of the amended rule to the present case would be "feasible" and would not work an "injustice," Rule 56 – as amended – shall govern the determination of the parties' motions. Farmers Ins. Exch., 632 F.3d at 777 n.4 (citing 28 U.S.C. § 2074(a)).

the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id.

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citing Rossy v. Roche Prod., Inc., 880 F.2d 621, 624 (1st Cir. 1989)). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

**B.      Plaintiffs' FTCA Claims**

Pursuant to the FTCA, the United States waives its sovereign immunity "for certain torts committed by federal employees." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The act vests district courts with:

> exclusive jurisdiction of civil actions against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); see Santiago-Ramirez v. Secretary of Dep't of Defense, 984 F.2d 16, 17 (1st Cir. 1993).[8]

In the present case, there is no dispute that all relevant events transpired in Puerto Rico (Docket Nos. 1, ¶ 4; 13, ¶ 4); therefore, applicable Puerto Rico law shall govern plaintiffs' claims. 28 U.S.C. § 1346(b). To prevail on a medical malpractice claim under Puerto Rico law, a plaintiff must establish "1) the duty owed, 2) an act or omission transgressing that duty, and 3) a sufficient causal nexus between the breach and the harm." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia, 394 F.3d 40, 43 (1st Cir. 2005). A healthcare provider has a duty to use "the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, regardless of regional variations in the professional acumen or level of care." Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77-78 (1st Cir. 1993). "Transgressions of this duty may include, among other things, failing to diagnose

---

[8] Since – as stated above – Atlantic Medical Center was covered by the FSCHAA during the relevant period and Dr. Torres-Rivas acted within the scope of his employment in treating Serrano-Cortés, any remedy sought by plaintiffs in this case must be pursued in accordance with the terms of the FTCA. Vargas-Rodríguez v. Rios-Batistini, 2009 U.S. Dist. LEXIS 107150, at *5 (D.P.R. Nov. 17, 2009). As the FTCA only allows for suits against the United States *eo nomine*, claims as to all other defendants should be DISMISSED WITH PREJUDICE. Carroll v. United States, 674 F. Supp. 2d 346, 349 (D.P.R. 2009) (citing 28 U.S.C. § 2679(a)).

6

an otherwise diagnosable medical condition or providing a patient with no reasonable disclosure of available choices of diagnosis and treatment, and the risks inherent in each." Carrión v. United States, 2010 U.S. Dist. LEXIS 97256, at *11 (D.P.R. Sept. 16, 2010) (citations omitted). To establish causation, a plaintiff must prove by a preponderance of the evidence that "the [medical provider's] negligent conduct was the factor that 'most probably' caused harm to the plaintiff." Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162 (1st Cir. 2005) (quoting Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994)).

Under Puerto Rico law, "there exists always a presumption that the treating physicians have observed a reasonable degree of care ... in the process of giving medical attention and treatment." Rolon-Alvarado, 1 F.3d at 78 (quoting Del Valle Rivera v. United States, 630 F. Supp. 750, 756 (D.P.R. 1986)). Due to this presumption, "a plaintiff bent on establishing a breach of a physician's duty of care ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it." Rojas-Ithier, 394 F.3d at 43 (quoting Cortés-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 190 (1st Cir. 1997). There is a narrow exception to the general rule requiring expert testimony – not applicable in the present case – for occasions where the claimed medical malpractice is "sufficiently blatant or patent that lay persons, relying on common knowledge and experience, can legitimately recognize or infer negligence." Rolon-Alvarado, 1 F.3d at 79.

Where a presumption shifts the burden of proof to the opposing party, that party – in the summary judgment context – cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Suárez, 229 F.3d at 53. In their opposition, plaintiffs seek to rebut the presumption that treating physician

7

Dr. Torres-Rivas complied with the "prescribed standard of emergency medicine" – and, as a result, failed to correctly diagnose Serrano-Cortés' condition – by citing to Dr. Miranda-Aponte's deposition transcript and Dr. Martín García's ("Martín-García") expert report. (Docket Nos. 37; 37-1; 37-2.) However, plaintiffs have disregarded the proper procedures for submitting facts on a motion for summary judgment in this district. See Local Rule 56. Plaintiffs cite only generally to Dr. Martín-García's expert report, without including a citation to a particular page or paragraph, and do not offer the report in support of a proposed fact, or to support a denial or qualification of a fact submitted by movant. (Docket No. 37, p. 2.) Therefore, this report shall be disregarded for purposes of this motion. See Local Rule 56; Marrero-Saez v. Municipality of Aibonito, 2011 U.S. Dist. LEXIS 22021, at *4 (D.P.R. Mar. 4, 2011). While plaintiffs include page citations to Dr. Miranda-Aponte's deposition transcript, they again fail to proffer such testimony to support, deny or qualify a particular material fact. (Docket No. 37, p. 2.) In light of this, while citations to Dr. Miranda-Aponte's opinion testimony shall be taken into account, any material fact referenced in the cited testimony that is not properly submitted in accordance with this court's procedures shall be disregarded. See Local Rule 56.

In his deposition, Dr. Miranda-Aponte concluded that Dr. Torres-Rivas failed to 1) take a complete history of Serrano-Cortés' present illness, 2) adequately describe Serrano-Cortés' skin lesions in the medical file, and 3) document whether Serrano-Cortés had followed up as prescribed with her primary care physician following her March 31, 2006 emergency room admission.[9] (Docket No. 37-1, pp. 42:11-43:18, 48:13-17.) Dr. Miranda-Aponte opined that Dr. Torres-Rivas should

---

[9] Dr. Miranda-Aponte also stated that the medical file did not record Serrano-Cortés' vital signs immediately prior to her discharge, but indicated that this lapse had no bearing on the present case. (Docket No. 37-1, pp. 48:13-49:21.)

have asked Serrano-Cortés about the origins of her condition, asking specific questions about how it developed, how it was relieved or exacerbated, and whether Serrano-Cortés had a history of allergies. (Docket No. 37-1, p. 42:11-21.) He also stated that Dr. Torres-Rivas should have included a more detailed description of Serrano-Cortés' skin lesions in her medical records. (Docket No. 37-1, p. 42:24-43:5.) While such statements arguably set out the applicable medical standard, plaintiffs have failed to submit sufficient evidence "confirming [Dr. Torres-Rivas'] failure to meet [this standard]." Rojas-Ithier, 394 F.3d at 43 (citation omitted). Since – as stated above – neither party has submitted Serrano-Cortés' medical records or relevant deposition testimony regarding her April 11, 2006 emergency room visit, the court will not speculate as to the procedures Dr. Torres-Rivas employed in reaching his diagnosis. Nevertheless, assuming, *arguendo*, that plaintiffs overcame the presumption that Dr. Torres-Rivas observed a reasonable degree of care, the record does not indicate that Serrano-Cortés was experiencing symptoms of an allergic reaction when she was seen by Dr. Torres-Rivas on April 11, 2006. During the visit in question, it is uncontested that Serrano-Cortés' skin lesions were isolated to her forearms and thighs. (Docket Nos. 1, ¶ 4; 13, ¶ 4; 28, p. 3; 39, p. 2; 28-2, p. 32:2-19.) Dr. Miranda-Aponte, however, stated in his deposition that allergic reactions due to the ingestion of an oral medication are systemic, and should thus "reflect itself throughout the whole body." (Docket Nos. 28, p. 4; 39, p. 3; 28-2, pp. 51:4-52:4.) Dr. Miranda also admitted that Serrano-Cortés' symptoms during the April 11, 2006 visit were compatible with psoriasis, of which Serrano-Cortés had a history, and tinea corporis, which is what she was diagnosed with by Dr. Torres-Rivas, thus suggesting that Dr. Torres-Rivas' diagnosis was reasonable. (Docket Nos. 28, pp. 3-4; 39, p. 2; 28-2, pp. 32:24-33:3, 35:21-24.) While plaintiffs allege that Serrano-Cortés subsequently developed swelling in both eyes, loss of vision, an inability

9

to speak, and a narrowing of her trachea – leading to a diagnosis of allergic reaction (Docket No. 1, ¶¶ 5-7) – the procedures employed by Dr. Torres-Rivas and the diagnosis he reached must be evaluated as of the date he treated Serrano-Cortés; "fault and damage [must be] more than a mere hindsight possibility." Del Valle Rivera, 630 F. Supp. at 756.  Therefore, given that Serrano-Cortés' symptoms as of April 11, 2006 did not suggest – based on Dr. Miranda-Aponte's testimony – that she was suffering from an allergic reaction to clinoril, any error committed by Dr. Torres-Rivas in failing to diagnose said condition was reasonable, and thus not actionable.  Rolon-Alvarado, 1 F.3d at 78 ("even an acknowledged error in medical judgment cannot support a malpractice claim so long as the mistake is reasonable") (citing Oliveros v. Abreu,1 P.R. Offic. Trans. 293, 314 (1973)).

**IV.    CONCLUSION**

In view of the foregoing, movant's motion for summary judgment (Docket No. 27) should be GRANTED.  Plaintiffs' claims as to all other defendants should be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation.  Fed R. Civ. P. 72(b); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 13th day of May, 2011,

s/Marcos E. López
U.S. Magistrate Judge